For Publication

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

EMAX FINANCIAL GROUP, LCC,    )
    )
         **Plaintiff,**    )
    **v.**    )
    )
THE UNITED STATES VIRGIN ISLANDS,    )    **Civil Action No. 2009-086**
and THE VIRGIN ISLANDS BUREAU    )
OF INTERNAL REVENUE,    )
    )
         **Defendants.**    )
_____ )

**Attorneys:**
**Joseph A. DiRuzzo, III, Esq.,**
Miami, FL
    *For the Plaintiff*

**Aquannette Y. Chinnery, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendants*

## MEMORANDUM OPINION

**Lewis, District Judge**

This matter is before the Court on Plaintiff Emax Financial Group, LLC's Motion for Attorney's Fees, which was filed on October 27, 2010. (Dkt. No. 24). The matter was fully briefed, and a hearing was held on February 13, 2012. For the reasons that follow, Plaintiff's Motion for Attorney's Fees is denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Emax Financial Group, LLC ("EMAX" or "Plaintiff") is a limited liability company organized under the laws of the United States Virgin Islands. (*See* Compl. ¶ 1, Dkt. No. 1). EMAX filed tax returns with Defendant Virgin Islands Bureau of Internal Revenue

("VIBIR" or "Defendant") for tax years 2004-2007. (Compl. ¶¶ 14-17; *see also* Tax Returns, Dkt. Nos. 1-1 through 1-4).

On December 27, 2007, EMAX, through its accountant James Carney,[1] filed a "Form 1139" with the VIBIR claiming a net operating loss ("NOL") of $53,585,486 for tax year 2006, and seeking a tentative carryback adjustment for tax years 2004 and 2005 in the amounts of $2,217,233 and $729,836, respectively. (*See* Dkt. No. 1-5).[2] The VIBIR issued refund checks in amounts corresponding to the December 27, 2007 Form 1139 on October 28, 2008. (*See* Dkt. Nos. 1-7, 1- 8).

On October 21, 2008, Plaintiff filed a Form 1139 with the VIBIR claiming a NOL of $250,273,895 for tax year 2007, and seeking a tentative carryback adjustment for tax year 2005 in the amount of $3,431,607. (*See* Dkt. No. 1-6). By letter dated December 8, 2008, Gail Johnson, a VIBIR revenue agent, wrote Carney "confirming" discussions held by teleconference earlier that day, and requesting a "written dialogue stating when, how, and where the claim [*sic*] NOL took place" as well as "supporting documents . . . necessary to substantiate the NOL." (Dkt. No. 13-6). The letter advised that failure to respond by December 22, 2008, would "result in disallowing the NOL for all applicable years." *Id.* On December 22, 2008, Carney responded with a letter addressing seventeen questions posed by the VIBIR. (Dkt. No. 13-5). The letter

---

[1]    Carney also represented two shareholders of EMAX, James Pedrick and Mitchell Heffernan, before the VIBIR. On July 8, 2007 and December 27, 2007, respectively, Pedrick and Mitchell filed amended tax returns (using "Form 1040X"), for tax years 2003, 2004, and 2007, based on net operating losses suffered by EMAX. (*See* Dkt. No. 1-10).

[2]    "A 'net operating loss' results from deductions in excess of gross income for a given year. 26 U.S.C. § 172(c). Under § 172(b)(1)(A), a taxpayer may carry its net operating loss either backward to past tax years or forward to future tax years in order to 'set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.'" *United Dominion Indus., Inc. v. United States,* 532 U.S. 822, 825 (2001) (quoting *Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386 (1957)). Form 1139 may be used by a taxpayer to apply for a tentative carryback adjustment based on a claimed net operating loss. *See* 26 C.F.R. § 1.6411-1(b)(1)-(2).

indicated that EMAX would immediately provide certain documents related to its tax filings, employment contracts, payroll, and assets.   EMAX further agreed to provide additional responsive documents that were in the possession of a third party at a later date.  *Id*.

By letter dated January 21, 2009, Johnson responded to Carney indicating that she had received documents from him on December 22, 2008, but that "no substantiation has been presented for the $53,585,486 Net Operating Loss as requested on Form 1139 Corporation Application for Tentative Refund."  (Dkt. No. 13-4).  She requested a "written dialogue stating when, how, and where the claim [*sic*] NOL took place . . . with supporting documents such as an entity detailed flowchart . . . and any other supporting documents [] deem[ed] necessary to substantiate the NOL." *Id*.  After advising of the need to be prepared "to fully explain the nature of the NOL along with supporting documents," the letter concluded:

> Your schedule to respond is February 3, 2009 at 9:00 a.m. If you are unable to provide the requested substantiation please sign the enclosed 4549s[3] for 2004 and 2005 disallowing the NOL carry back and return the form with any remittance made out to the Virgin Islands Bureau of Internal Revenue within ten (10) working days.  Failure to act accordingly will result in the disallowance of the carry back and closing the case unagreed.

*Id.*

On January 30, 2009, Carney responded to Johnson's January 21, 2009 correspondence. (Dkt. No. 13-3).  Included with the response was a three-page dialogue about the events leading to EMAX's demise and the nature of the NOL; a history of Pedrick and Heffernan's relationship to EMAX; an EMAX organizational chart; the tax histories of EMAX and its owners; and a

---

[3]     According to its language, by signing the Form 4549, EMAX would have agreed that "I do not wish to exercise my appeal rights with the Bureau of Internal Revenue or to contest in the District Court of the Virgin Islands the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided below."  (Dkt. No. 13-4 at 2); *see also Ulrich v. Commissioner of Internal Revenue*, 585 F.3d 1235, 1236 (9th Cir. 2009) (holding that by signing a Form 4549, taxpayers waived their ability to contest liability set forth on the form).

spreadsheet regarding the financial breakdown of the NOL. *Id*. The three-page dialogue stated that "[b]y the end of 2007 EMAX experienced more than $250 million in losses." *Id*. at 4. The spreadsheet reflected both the $53,585,486 NOL for tax year 2006 and the $250,273,895 NOL for tax year 2007. *Id*. at 8. The spreadsheet also indicated that **$3,461,607** was the "**Amt Due Taxpayer**." *Id*. (emphasis in original).

The January 30, 2009 Letter also stated that EMAX was simultaneously providing a banker's box with approximately 4,000 supporting documents. *Id*. In concluding, the letter noted:

> These taxpayers have suffered huge catastrophic losses measured on a global basis . . . Before the near collapse of the entire United States financial system these taxpayers honestly and faithfully paid in all tax due when, how and where the VIBIR required. We now expect the same display of integrity by the government to pay back those taxes previously paid in because the profits are now lost.

*Id*.

On June 19, 2009, Johnson sent another letter to Carney asking for further information, including details regarding EMAX's relationship to Mortgage Lenders Network and documents concerning how EMAX acquired capital to fund its loans. (Dkt. No. 13-2). The letter stated that "this may or may not be all that is needed for the audit" and that EMAX had until July 2, 2009, to respond, or the VIBIR would disallow the NOL and close the case without agreement. *Id*. EMAX replied on July 2, 2009, providing further documents and a response to the specific questions posed in the VIBIR's June 19, 2009 Letter. (Dkt. No. 13-1).

On July 29, 2009, counsel for Pedrick, Heffernan, and EMAX sent a letter to Ramon Carrasquillo, another employee of the VIBIR. (Dkt. No. 1-10). Among other things, the letter questioned Johnson's objectivity and requested that she be removed from the case and another auditor assigned. *Id*. The letter further stated that because "the requests for refunds of taxes were

made more than six months ago, a refund suit is now timely" and that "EMAX, Mr. Pedrick and Mr. Heffernan have been deemed to have exhausted their administrative remedies." *Id*. It noted that Pedrick, Heffernan and EMAX would file suit unless their refund claims were processed by August 24, 2009. *Id.* This letter was followed by another written communication to Carrasquillo, dated August 24, 2009, which extended the August 24, 2009 deadline to September 10, 2009. (Dkt. No. 11-1).

On October 29, 2009, EMAX filed its Complaint. The Complaint alleges three causes of action: a claim for a refund under 26 U.S.C. § 7422 and attorney's fees under 26 U.S.C. § 7430 (Compl. ¶¶ 27-33); a claim for unjust enrichment (*id*. at ¶¶ 34-39); and a claim for conversion (*id*. at ¶¶ 40-45). Heffernan and Pedrick filed separate but similar complaints on the same day. (*See* Civ. Action 2009-087, *Heffernan v. Bureau of Internal Revenue*; Civ. Action No. 2009-088, *Pedrick v. Bureau of Internal Revenue*).

On January 5, 2010, the VIBIR filed a Motion to Dismiss, arguing that EMAX's unjust enrichment and conversion claims were preempted by federal tax law. (Dkt. No. 8). Plaintiff filed its opposition on January 25, 2010. (Dkt. No. 9). In its reply brief, filed on February 18, 2010, the VIBIR argued, for the first time, that the Court lacked subject matter jurisdiction over EMAX's refund claim because EMAX had failed to exhaust its administrative remedies pursuant to 26 U.S.C. § 7422. (Dkt. No. 10). Specifically, the VIBIR cited 26 C.F.R. § 1.6411 and contended that, as of the time of the filing of its Complaint, EMAX had sought its NOL refund only through Form 1139 and that "[t]he filing of a Form 1139 is not a claim for credit or refund" sufficient to satisfy section 7422's administrative exhaustion requirement. *Id*. at 2. In a surreply filed on March 1, 2010, EMAX argued, among other things, that its Form 1139 and its multiple letters to the VIBIR regarding the NOL claim satisfied the exhaustion requirement under the

5

"informal claim doctrine."  (Dkt. No. 13; *see also* Dkt Nos. 13-1 through 13-7).  On March 10, 2010, the VIBIR filed a response to the surreply.  (Dkt. No. 14).

On September 3, 2010, EMAX filed a "Notice of Partial Satisfaction," indicating that on August 26, 2010, it had received a check from the VIBIR in the amount of $3,714,547.64.  (Dkt. No. 17).  Then, on March 7, 2011, the Court dismissed Counts II and III of the Complaint on the basis that the parties had conceded that Plaintiff's attorney's fees claim was the only remaining issue in the case.  (Dkt. No. 30).

On October 27, 2010, EMAX filed the instant Motion for Attorney's Fees.  (Dkt. No. 24). The VIBIR filed its opposition on November 10, 2010, arguing that the Court lacks subject matter jurisdiction over EMAX's refund suit because EMAX failed to exhaust its administrative remedies prior to filing suit.  (Dkt. No. 27).  EMAX filed its reply brief on November 17, 2010. (Dkt. No. 28).

On October 13, 2011, this Court issued an order requiring the parties to submit briefs addressing certain questions regarding the statutory and regulatory requirements underlying applications for tentative carryback adjustments, the VIBIR's processing of such applications, and the informal claim doctrine. (Dkt. No. 33).  Following the Court's receipt of the parties' submissions (Dkt. Nos. 35 through 37) and further briefing on Plaintiff's Motion for Attorney's Fees (Dkt. Nos. 50, 53), a hearing on this matter was held on February 13, 2012.

## II.   DISCUSSION

### A.  Subject Matter Jurisdiction

The VIBIR argues that this Court lacks subject matter jurisdiction over this case—and thus EMAX's attorney's fees claim—because EMAX failed to satisfy section 7422(a)'s administrative exhaustion requirement.   In response, EMAX invokes the "informal claim"

doctrine, arguing that its pre-complaint filings and communications with the VIBIR rise to the level of an informal claim for a refund, thus satisfying the exhaustion requirement.  For the reasons that follow, the Court agrees that EMAX exhausted its administrative remedies.

### i.  The Virgin Islands Mirror Code

The Virgin Islands has a "mirror code" system of taxation.  In sum, "Virgin Islands residents discharge their United States tax liability by paying all income taxes directly to the Treasury of the Virgin Islands." *Abramson Enters., Inc. v. Virgin Islands,* 994 F.2d 140, 142 (3d Cir. 1993); *see also Hefferman v. Virgin Islands*, 2010 WL 4942160 (D.V.I. Nov. 30, 2010) (discussing mirror code).  The payment of taxes by Virgin Islands residents, however, is governed by the Internal Revenue Code ("I.R.C."): "Whether codified locally or not, however, all provisions of the I.R.C. have force in the Virgin Islands unless they are manifestly inapplicable or incompatible with a separate territorial income tax." *Hefferman*, 2010 WL 4942160 at *2 (citing *WIT Equip. Co., Inc. v. Director, Virgin Islands Bureau of Internal Revenue*, 185 F. Supp. 2d 500, 502 (D.V.I. 2001)); *see Abramson,* 994 F.2d at 142 ("As the law has developed under the mirror system, the provisions of the Internal Revenue Code are applicable to the Virgin Islands so long as the specific section to be applied is not manifestly inapplicable or incompatible with a separate territorial income tax.") (citations omitted).  In essence, federal income tax law governs the payment of taxes to the VIBIR.[4]

---

[4]     The Virgin Islands tax code contains numerous provisions that mirror those of the I.R.C. *See Pan Am. World Airways Inc. v. Virgin Islands*, 459 F.2d 387, 391 n.2 (3d Cir. 1972) ("The Virgin Islands legislature has enacted . . . a comprehensive plan for procedure and administration of the mirror image income tax, derived from Subtitle F of the Internal Revenue Code of 1954. This plan includes a provision for judicial review in the district court of asserted deficiencies, 33 V.I.C. §§ 942, 943, 944, and 1931(1), analogous to review in the tax court. 26 U.S.C. §§ 6212, 6213.  It also permits suits for refund, 33 V.I.C. § 1692, analogous to such suits pursuant to 26 U.S.C. § 7422.  As with the Internal Revenue Code . . . there is a prohibition against . . . suing for a refund until after the administrative agency has acted on a refund claim.").

### ii.  The Administrative Exhaustion Requirement

A district court's jurisdiction over civil actions for refunds instituted by a taxpayer against the United States stems from 26 U.S.C. § 7422.  *See* 26 U.S.C. § 7422; *Francisco v. United States,* 267 F.3d 303, 306 (3d Cir. 2001). Section 7422 states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).

The phrase "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof" creates an administrative exhaustion requirement that a taxpayer must fulfill prior to filing a tax refund suit under section 7422. *United States v. Williams*, 514 U.S. 527, 533 (1995) ("It is undisputed that § 7422 requires administrative exhaustion."); *Redhead Mgmt., Inc. v. Virgin Islands*, 2011 WL 1506040, at *3 (D.V.I. March 31, 2011) (noting that section 7422 "requires taxpayers to exhaust administrative avenues, prior to bringing a claim for refund in this Court.").  Further, a party must wait six months from the date of the filing of a claim for refund before it may commence a refund suit under section 7422(a), unless the VIBIR renders its decision within that time.  26 U.S.C. § 6532(a)(1).

"[S]ection 7422's administrative exhaustion requirement is jurisdictional; unless Plaintiff has made a claim for refund from the VIBIR, this Court lacks subject matter jurisdiction over his refund claim."  *Pedrick v. Virgin Islands,* 2010 WL 4027807, at *1 (D.V.I. Oct. 13, 2010); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 14 (2008) (finding that "the plain

language of 26 U.S.C. §[] 7422(a) . . . requires a taxpayer seeking a refund . . . to file a timely administrative refund claim before bringing suit against the Government"); *Goulding v. United States*, 929 F.2d 329, 331 (7th Cir. 1991), *cert. denied,* 506 U.S. 865 ("A timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.") (citation omitted).

### iii.   The "Informal Claim" Doctrine

Normally, a taxpayer satisfies the administrative exhaustion requirement by filing a formal claim for a refund, such as an amended tax return.  *See* 26 CFR § 301.6402-3(a) (for a corporation's taxable year "for which a Form 1120 has been filed, a claim for refund shall be made on Form 1120X (Amended U.S. Corporation Income Tax Return)").  However, under the informal claim doctrine, "a timely filed informal claim" can satisfy section 7422(a)'s administrative exhaustion requirement.  *Evans v. United States*, 618 F. Supp. 621, 622-23 (E.D. Pa. 1985), *aff'd,* 787 F.2d 581 (3d Cir. 1987).  To be considered an informal claim, "[w]hat is essential is that the taxpayer must inform the Internal Revenue Service that a claim for a refund is being asserted, and must provide enough information so that the IRS can adequately examine the merits of the claim." *Id*. (citing *Am. Radiator and Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920 (Ct. Cl. 1963)).

In *United States v. Kales*, 314 U.S. 186 (1941), the Supreme Court established the general parameters for an informal claim for a tax refund: (1) the claim must be in writing; and (2) the writing must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim." *Id*. at 194; *see also VDO-ARGO Instruments, Inc. v. United States,* 3 Cl. Ct. 359, 362 (1983) ("The written component of a valid informal refund claim must give the Commissioner adequate notice that a refund of tax is sought for certain years and of the basis for the claim.").  While a "written component" is required, the writing does not have to take any particular form.  "If a taxpayer

9

submits to the Internal Revenue Service some sort of written instrument which informs the administrative agency that the taxpayer believes that he has been subjected to an erroneous or illegal tax exaction, and that he desires a refund or credit because of such action, this is sufficient." *D'Amelio v. United States*, 679 F.2d 313, 315 (3d Cir. 1982) (citation omitted). "[A] court must examine the writing, or series of writings, in light of all of the existing facts and circumstances to determine whether the IRS had sufficient notice that a taxpayer wished to assert a right with regard to the overpayment of tax."   *United States v. Commercial Nat. Bank of Peoria*, 874 F.2d 1165, 1171 (7th Cir. 1989).

Several courts, including the Supreme Court, have found that letters to the IRS may constitute an informal claim.  *See, e.g., Kales*, 314 U.S. at 196 (finding that letter from a taxpayer explaining that he had potentially overpaid his taxes and asserting "the taxpayer's consequent 'right to a refund of said tax to the extent of such excess,'" was an informal claim for a refund, particularly because the IRS had treated the letter as a claim for refund); *Penn Mut. Indemn. Co. v. Comm'r*, 277 F.2d 16, 18–19 (3d Cir. 1960) (holding that a letter attached to a return protesting the constitutionality of the tax and refusing to pay the tax shown due on the return was an informal claim); *Philadelphia Marine Trade Ass'n/Int'l Longshoremen's Ass'n Vacation Fund v. United States*, 2006 WL 1997465, at *5 (E.D. Pa. July 17, 2006), *rev'd on other grounds,* 523 F.3d 140 (3d Cir. 2008) (finding that letters by taxpayers stating "that they believed that the tax assessment was erroneous and that a refund should be forthcoming" and that they were "anxious to resolve this matter and have the money returned to this Fund as quickly as possible . . . were informal requests for a refund of the levy."); *Weisman v. Comm'r of Internal Revenue*, 103 F. Supp. 2d 621, 628 (E.D.N.Y. 2000) (finding that letter and an attached unsigned Form 1040 sent by a taxpayer stating that "[i]t is my contention that not only do I not owe any taxes, but I am

owed a refund . . . . I am offering a settlement in the amount of ZERO DOLLARS therefore relieving the IRS of its debt to me for the refund of 1990 overpaid taxes," and explaining that his employer had withheld his income tax from his pay but had never remitted the money to the IRS, was an informal refund claim); *PPG Indus., Inc. v. United States*, 1994 WL 742277, at *3 (W.D. Pa. Oct. 20, 1994) (finding that letter from taxpayer "that informs the IRS that plaintiff believes duplicate tax payments were made in 1987 and states that plaintiff desires a refund" combined with additional letter that "lays out in more detail the specific tax payments that were duplicated . . . provided the government sufficient notice to constitute an informal refund claim.").

### iv.  Analysis

#### 1.  EMAX's Form 1139

EMAX first argues that the Form 1139, which was filed on October 21, 2008, was an informal claim. (*See* Dkt. No. 35).

Form 1139 may be used by a taxpayer to apply for a tentative carryback adjustment refund based on a claimed net operating loss.  *See* 26 C.F.R. § 1.6411-1(b)(1) & (2).  As pointed out by the VIBIR, however, the I.R.C. specifically provides that an application for a tentative carryback adjustment—including Form 1139—does not constitute a claim for a refund. *See* 26 U.S.C. § 6411(a) ("A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback . . . . Except for purposes of applying section 6611(f)(4)(B) [calculating interest], an application under this subsection *shall not constitute a claim for credit or refund*.") (emphasis added).  Federal regulations are in accord:

> The application for a tentative carryback adjustment shall be filed, in the case of a corporation, on Form 1139 . . . . *An application for a tentative carryback adjustment does not constitute a claim for credit or refund*. If such application is disallowed by the district director or director of a service center in whole or in

11

part, no suit may be maintained in any court for the recovery of any tax based on such application.

26 C.F.R. § 1.6411-1(b)(1) & (2) (emphasis added).

Numerous courts, including one in this district, have rejected the argument that an application for a tentative carryback adjustment is an "informal claim" for purposes of satisfying section 7422's administrative exhaustion requirement. *Redhead Mgmt., Inc.*, 2011 WL 1506040, at *4 ("[T]he plaintiff's filing of an 'Application for Tentative Refund' falls short of the clear mandate of section 7422. It is well-established that an application for a tentative carryback adjustment does not constitute a claim for refund under 7422(a).") (citing 26 CFR § 1.6411–1); *see Kirsh v. United States*, 131 F. Supp. 2d 389, 391 (S.D.N.Y. 2000), *aff'd*, 258 F.3d 131 (2d Cir. 2001) (finding that Form 1045 application for tentative carryback adjustment could not be considered an informal claim for purposes of section 7422's administrative exhaustion requirement); *Crismon v. United States*, 550 F.2d 1205, 1206 (9th Cir. 1977) ("The Internal Revenue Code, the Treasury Regulations, and [the relevant] Form ... all state specifically that [an] Application for Tentative Carryback Adjustment, is not a claim for a credit or refund."); *Thomson v. United States,* 1999 WL 314827, at *4 (Fed. Cl. Apr. 13, 1999) (finding that "Application for Tentative Refund" was not a refund claim, "[t]hus, plaintiffs did not duly file an administrative claim for refund for tax year 1991 in accordance with applicable statutory and regulatory provisions. Therefore, pursuant to § 7422(a), this court does not have jurisdiction over plaintiffs' 1991 refund claim."); *I.C.T.S. U.S.A., Inc. v. United States*, 2007 WL 512791, at *2 (S.D.N.Y. Feb. 15, 2007) (finding that Form 1139 did not constitute an "informal claim"); *Bethlehem Indus., Inc. v. United States,* 1982 WL 1704, at *1 (N.D. Ill. Oct. 14, 1982) ("Thus, plaintiff's application for tentative carryback adjustment [Form 1139] does not itself constitute a proper claim for refund required under § 7422."); *see also Coca-Cola Co. v. United States,* 87

Fed. Cl. 253, 257 (Fed. Cl. 2009) ("[A] tentative refund application under § 6411 does not constitute a claim upon which the taxpayer may maintain a suit in court").

Thus, EMAX's Form 1139, filed on October 21, 2008, cannot be considered an "informal claim."

### 2.   EMAX's Letters to the VIBIR

EMAX also argues that its written correspondence with the VIBIR following the filing of its Form 1139 constitutes an "informal claim."   (*See* Dkt. No. 13 at 6; Dkt. No. 35 at 4). Specifically, EMAX points to its letters dated December 22, 2008 (Dkt. No. 13-5), January 30, 2009 (Dkt. No. 13-3), July 2, 2009 (Dkt. No. 13-1), July 29, 2009 (Dkt. No. 1-10), and August 24, 2009 (Dkt. No. 1-11), together with letters from the VIBIR dated December 8, 2008 (Dkt. No. 13-6), January 21, 2009 (Dkt. No. 13-4), and June 19, 2009 (Dkt. No. 13-2), as evidence of its informal refund claim.   EMAX claims that the correspondence shows that it "was seeking a refund and the [VIBIR] knew and [was] investigating [its] refund request." (Dkt. No. 35 at 4; *see also* Dkt. No. 13 at 7).   In response, the VIBIR argues that this correspondence shows that the VIBIR was conducting an audit, not that it was processing a refund claim.   (Dkt. No. 14 at 2).

When determining whether a taxpayer has made an informal claim, courts are instructed to "examine the writing, or series of writings, in light of all of the existing facts and circumstances to determine whether the IRS had sufficient notice that a taxpayer wished to assert a right with regard to the overpayment of tax."  *Commercial Nat. Bank of Peoria*, 874 F.2d at 1171.  Here, "in light of all the existing facts and circumstances," the Court finds that EMAX's letters to the VIBIR constitute an informal claim for a refund.

Pursuant to the I.R.C., when a taxpayer files an application for a tentative carryback adjustment, including by filing a Form 1139, the process is as follows:

> Within *a period of 90 days* from the date on which an application for a tentative carryback adjustment is filed under subsection (a) . . .  the [Commissioner of the VIBIR] *shall* make, to the extent he deems practicable in such period, *a limited examination* of the application, *to discover omissions and errors of computation therein*, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination except that the [Commissioner] may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90-day period or material omissions. . . . Any remainder *shall*, within such 90-day period, be either credited against any tax or installment thereof then due from the taxpayer, or refunded to the taxpayer.

I.R.C. § 6411(b) (emphasis added); *see* 26 C.F.R. § 1.6411-3(b) ("Within the 90–day period described in paragraph (a) of this section, the Commissioner *shall* make, to the extent deemed practicable within this period, an examination of the application to discover omissions and errors of computation.") (emphasis added); *see also Jefferson Smurfit Corp. (U.S.) v. United States,* 439 F.3d 448, 452 (8th Cir. 2006) ("When a taxpayer submits a tentative § 6411 application to carry back losses, the IRS is to make a "limited examination" and act on it within 90 days."); *Coca-Cola*, 87 Fed. Cl. at 256-57 (characterizing section 6411 as "giv[ing] certain taxpayers the right to seek an expedited refund, and [] creat[ing] a presumption in favor of payment . . . the only basis upon which the IRS may deny a taxpayer's § 6411 application is if the IRS examiner determines that it contains omissions or errors that cannot be corrected within the 90–day period.").

Thus, under I.R.C. § 6411(b) and 26 C.F.R. § 1.6411-3(b), the VIBIR is *required* to handle an application for a tentative carryback adjustment within 90 days of its filing, and its review of the application is essentially "limited" to whether the taxpayer's tentative refund claim contains mathematical errors.[5]

---

[5]     Indeed, the abbreviated treatment allowed by statute and regulation for an application for a tentative carryback adjustment is a common reason cited by courts for finding the informal claim doctrine inapplicable to Form 1139:

Here, EMAX filed its Form 1139 on October 21, 2008.  Pursuant to I.R.C. § 6411, the VIBIR had 90 days, or until January 19, 2009, to examine EMAX's application for a tentative carryback adjustment and either disallow it or issue EMAX a refund.  Yet, its examination of EMAX's application and the production of information and documentation by EMAX in response to requests from the VIBIR extended past January 19, 2009.  (*See, e.g.,* January 21, 2009 Letter, Dkt. No. 13-4; June 19, 2009 Letter, Dkt. No. 13-2).  Specifically, on January 21, 2009, two days after the 90-day review had expired, the VIBIR sent EMAX a letter stating that "no substantiation has been presented for the $53,585,486 Net Operating Loss as requested on Form 1139 Corporation Application for Tentative Refund," and requesting a "written dialogue stating when, how, and where the claim [sic] NOL took place . . . this dialogue must be accompanied with supporting documents such as an entity detailed flowchart . . . and any other supporting documents you deem necessary to substantiate the NOL.  Further be prepared to fully explain the nature of the NOL along with supporting documents."   (January 21, 2009 Letter, Dkt. No. 13-4).

In response, on January 30, 2009, EMAX sent a letter to the VIBIR providing a detailed

---

ICTS argues that the tentative refund request it filed constituted an "informal claim" that substantially complied with the relevant requirements. This argument, if accepted, would not only contradict the plain meaning of the relevant regulations quoted above but would obliterate the distinction between a tentative application and a formal claim for a refund, a distinction of some importance since the Government, when processing a tentative request under Form 1139, "does little more than check the math" underlying the request, but does not formally resolve the refund request as it does with a formal request under Form 1120X.

*I.C.T.S. U.S.A., Inc.*, 2007 WL 512791, at *1-2; *see also Morse v. United States*, 1980 WL 99689, *2 (Ct. Cl. June 6, 1980) ("[T]he statutory scheme contemplates that applications for tentative carrybacks and claims for refund be administratively reviewed in significantly different ways. Under these circumstances, the Commissioner could not be reasonably expected to know that plaintiffs intended their application for tentative carryback adjustment to be a claim for refund.").

written explanation for why it believed it was entitled to a refund based on the NOL carryback,

an EMAX organizational chart, the tax histories of EMAX and its owners, and a spreadsheet

explaining the NOL. (*See* January 30, 2009 Letter, Dkt. No. 13-3).  The spreadsheet incorporated

EMAX's claimed 2006 *and* 2007 net operating losses and stated that **$3,461,607** was the "**Amt**

**Due Taxpayer**" for tax year 2005.  *Id.* at 8 (emphasis in original). Additionally, the letter stated

that EMAX was simultaneously providing a banker's box with approximately 4,000 supporting

documents.  *Id.*  The letter concluded:

> These taxpayers have suffered huge catastrophic losses measured on a global
> basis . . . Before the near collapse of the entire United States financial system
> these taxpayers honestly and faithfully paid in all tax due when, how and where
> the VIBIR required. We now expect the same display of integrity by the
> government *to pay back those taxes previously paid in because the profits are
> now lost.*

*Id.* (emphasis added).

The Court finds that this letter "inform[ed] the [VIBIR] that a claim for a refund [wa]s

being asserted, [] and provide[d] enough information so that the [VIBIR] c[ould] adequately

examine the merits of the claim." *Evans,* 618 F. Supp. at 622-23.  After receiving the letter, the

VIBIR was on notice that EMAX was seeking a refund in the amount of $3,461,607 for tax year

2005 based on its 2007 NOL carryback claim.  Further, because the 90-day statutory period for

examining EMAX's October 21, 2008 Form 1139 had expired prior to the VIBIR's January 21,

2009 Letter, and because that letter requested information not within the "limited" scope of

review allowed by I.R.C. § 6411, the VIBIR could not have reasonably been operating under the

premise that it was still checking EMAX's October 21, 2008 Form 1139 for omissions and

mathematical errors.

The January 30, 2009 Letter, which requested the government to "pay back those taxes

previously paid in because the profits are now lost," combined with the spreadsheet specifically

referencing the 2007 NOL and stating that $3,461,607 was the amount due EMAX, was sufficient to put the VIBIR on notice that "the taxpayer believes that he has been subjected to an erroneous or illegal tax exaction, and that he desires a refund or credit because of such action." *D'Amelio,* 679 F.2d at 315; *see also Penn Mut. Indemn. Co,* 277 F.2d at 18–19; *Philadelphia Marine Trade Association/International Longshoremen's Ass'n Vacation Fund,* 2006 WL 1997465, at \*5; *PPG Indus., Inc.*, 1994 WL 742277, at \*3.[6]

The VIBIR argues that these letters cannot form the basis for an informal claim because they were part of an "audit." There is some evidence to support the VIBIR's claim that its January 21, 2009 Letter was part of an audit of EMAX.[7] However, at the hearing, counsel for the VIBIR was unable to articulate what specifically was being audited or the ultimate resolution of the alleged audit.

Even assuming that EMAX was being audited by the VIBIR during January 2009 and

---

[6]      In *Bethlehem Indus.*, the district court found that a letter sent by the taxpayer approximately 4 years after it had filed a Form 1139 was not an informal claim because it "merely inquired into the status of its Form 1139 application. It did not notify the Commissioner in any way that a separate claim for refund was being sought." 1982 WL 1704, at \*2. Here, however, the January 30, 2009 letter from EMAX to the VIBIR did not merely inquire into the status of the Form 1139; it provided the VIBIR with information not normally required to process a Form 1139 and stated that EMAX expected the VIBIR to "pay back those taxes previously paid in because the profits are now lost." (Dkt. No. 13-3).

[7]      For example, the January 21, 2009 Letter requests information regarding the "$53,585,496 Net Operating Loss as requested on Form 1139" (Dkt. No. 13-4), which is the same amount claimed as a NOL in EMAX's December 27, 2007 Form 1139 for tax years 2004 and 2005. (Dkt. No. 1-5). As of January 21, 2009, the VIBIR had already issued refunds to EMAX corresponding to the December 27, 2007 Form 1139. Further, the Form 4549s included with the VIBIR's January 21, 2009 Letter were specific to EMAX's December 27, 2007 Form 1139 for tax years 2004 and 2005. (Dkt. No. 13-4 at 2-4). Additionally, in the VIBIR's June 19, 2009 Letter requesting additional information, the Letter noted: "[T]his may or may not be all that is needed for the audit." (Dkt. No. 13-2). Thus, it is possible that the VIBIR was attempting to "audit" the tentative refund that it had already issued to EMAX. *See Coca-Cola Co.*, 87 Fed. Cl. at 257 ("even if the IRS initially issues the tentative refund, it nevertheless retains the right to conduct a more thorough audit of the taxpayer's application later and recapture any funds that it has erroneously paid." (citing I.R.C. § 6213(b)(3))).

thereafter, that does not prevent EMAX's January 30, 2009 Letter from being an informal claim for a refund of $3,461,607 due to EMAX's 2007 NOL.  "[S]tatements submitted to the Service as part of the audit do not necessarily constitute a claim for refund . . . However, the statements can constitute a claim if they meet the requirements, including a written statement requesting a refund."  *New England Elec. System v. United States,* 32 Fed. Cl. 636, 643 (Fed. Cl. 1995) (quoting Mertens, Law of Federal Income Taxation § 58.31, at 51–52 (1994)); *Mobil Corp. v. United States*, 67 Fed. Cl. 708, 721 (Fed. Cl. 2005) (challenges to IRS' findings raised in writing during audit of taxpayer's refund claim "combined with the parties' course of dealing during the audit of those claims" found to be an informal claim for refund).  EMAX stated in writing that it was "owed" $3,461,607 for taxes paid in 2005 because it had suffered a $250 million loss in 2007.  This was sufficient to put the IRS on notice that EMAX was claiming a refund.[8]

Based on the correspondence between EMAX and the VIBIR following the expiration of the 90-day review period for EMAX's October 21, 2008 application for a tentative carryback adjustment, particularly the January 21, 2009 and January 30, 2009 Letters (Dkt. Nos. 13-4 & 13-3), the Court finds that EMAX made an informal claim for a refund and that such claim was made more than six months before the filing of its October 29, 2009 Complaint. *See D'Amelio,* 679 F.2d at 315; *Evans,* 618 F. Supp. at 622-23.  Accordingly, EMAX has satisfied section

---

[8]     At the hearing, the VIBIR argued, for the first time, that the January 30, 2009 Letter and accompanying spreadsheet cannot be considered an informal claim because they were not signed under oath.  When asked for authority in support of this oath requirement, the VIBIR provided none.  Because this argument was raised for the first time at the hearing and because the VIBIR cited no authority to support this proposition, the Court will not consider it.  *See White v. FedEx Corp.*, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for the first time at the hearing."); *O'Connor v. Kelly*, 2004 WL 1012853, at *2 n. 5 (E.D. Pa. May 5, 2004) (rejecting an argument made by the plaintiff because, among other reasons, it had been raised for the first time at oral argument); *Garver v. Garver*, 1997 WL 47801, at *6 n. 1 (S.D.N.Y. Feb. 5, 1997) (finding that an argument raised for the first time at oral argument not was properly before the court).

7422's administrative exhaustion requirement and this Court has subject matter jurisdiction over this action, including EMAX's Motion for Attorney's Fees.  *See* 26 U.S.C. § 6532(a)(1);  26 U.S.C. § 7422.

   **B.  Attorney's Fees**

   Aside from the alleged failure to exhaust administrative remedies, the VIBIR raises several objections to Plaintiff's Motion for Attorney Fees, including that Plaintiff is not entitled to any attorney's fees because the VIBIR's position in the case was "substantially justified." (Dkt. No. 50 at 1-5).

   **i.  Applicable Legal Standard**

   I.R.C. § 7430 "allows a prevailing party to recover reasonable attorney's fees and costs expended in administrative proceedings and courtroom challenges to federal tax assessments." *Oelsner v. Gov't of Virgin Islands of U.S. ex rel. Virgin Islands Bureau of Internal Revenue,* 294 F. Supp. 2d 689, 693 (D.V.I. 2003).  To obtain attorney's fees under section 7430, a taxpayer must establish that 1) it is the "prevailing party;" and 2) it has exhausted its administrative remedies.  I.R.C. §§ 7430(b)(1) & 7430(c)(4)(A); *see also Nickell v. Director, Virgin Islands Bureau of Internal Revenue,* 1992 WL 510996, at *1 (D.V.I. Apr. 22, 1992).

   A taxpayer should not be treated as a "prevailing party" if the VIBIR establishes that its position in the court proceeding was "substantially justified."  I.R.C. § 7430(c)(4)(B); *see also Oelsner,* 294 F. Supp. 2d at 693 n.3 (noting that in cases filed after 1996, the government bears the burden of demonstrating that its position was "substantially justified.").  The VIBIR's position is substantially justified if it was "'justified to a degree that could satisfy a reasonable person'" or it had a "'reasonable basis both in law and fact.'" *Nicholson v. Comm'r of Internal Revenue*, 60 F.3d 1020, 1026 (3d Cir 1995) (citation omitted); *see also Rickel v. Comm'r of*

*Internal Revenue*, 900 F.2d 655, 665-66 (3d Cir. 1990) (determining that the "Commissioner's position could be deemed as reasonably supported in the case law" and holding on a particular issue that the Commissioner's position was "substantially justified").

### ii.  Analysis

The VIBIR claims that its position in this lawsuit—that Plaintiff failed to exhaust its administrative remedies—was "substantially justified" because it was based on case and statutory law that a Form 1139 is neither a formal or informal claim for a refund.  (Dkt. No. 50 at 3).  Plaintiff counters that the VIBIR's position was not substantially justified because it had honored EMAX's Form 1139 for other years and that selecting the October 21, 2008 Form 1139 at issue in this lawsuit for "examination" was "arbitrary." (Dkt. No. 53 at 2-3).  Plaintiff concludes that the VIBIR failed to ever state that it was denying the October 21, 2008 Form 1139 and, after this lawsuit was filed, ultimately refunded the exact amount sought by EMAX in that Form 1139.  *Id.*  Regarding this latter point, the VIBIR maintained that its payment was in response to a Form 1120X filed by EMAX on March 1, 2010, for tax year 2005.[9]

As discussed above, the VIBIR is correct that statutory and case law firmly stand for the proposition that the filing of a Form 1139 cannot be considered an informal claim for a refund and therefore does not constitute administrative exhaustion for purposes of I.R.C. § 7422. Indeed, in *Kaffenberger v. United States*, the Eighth Circuit reversed the district court's award of attorney's fees in a case that pivoted on whether the plaintiffs had made an informal claim.  314 F.3d 944, 960 (8th Cir. 2003).  The district court denied the IRS' motions to dismiss and for summary judgment on the issue and a jury ultimately found that plaintiffs had made an informal

---

[9]     In its March 1, 2010 surreply to the VIBIR's Motion to Dismiss, EMAX argued that, to the extent that Form 1139 was not the proper form, it had cured the defect for exhaustion of administrative remedies purposes by filing a Form 1120X on March 1, 2010.

claim. *Id*. at 949-50. The district court then awarded attorney's fees to the plaintiff under I.R.C. §

7430. *Id*. at 960. In overturning the award of attorney's fees, the Court of Appeals concluded:

> [W]e believe that this was a close case and may border on the outer reaches of the informal claim doctrine. It was by no means clear that the Kaffenbergers made an informal claim sufficient to toll the statute of limitations until their formal claim was filed . . . As such, we must conclude that the IRS's position that the Kaffenbergers had not made an informal claim for a refund was substantially justified.

*Id*. at 960; *see Stevens v. United States*, 2008 WL 2812014, at *3 (N.D. Cal. July 21, 2008)

(finding IRS' position substantially justified when issue was whether taxpayer had made

informal claim, and because of ambiguous Ninth Circuit law: "[a]t the outset of this proceeding

. . . the standard governing the dispute was not clear."); *see also Estate of Palumbo v. United

States*, 2011 WL 1575902, at *6 (W.D. Pa. April 21, 2011) (IRS's position was substantially

justified when it "seemingly found itself in a grey area."); *Weisbart v. U.S. Dept. of Taxation*,

2001 WL 1782873, at *5 (E.D.N.Y. Nov. 13, 2001) ("In cases of first impression, the United

States' advocacy of an unpersuasive opinion is typically considered to be substantially justified."

(citing *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993))).

In line with these cases, the Court finds that the VIBIR's position in this case was

substantially justified. Case and statutory law are clear that a Form 1139 cannot serve as an

informal claim. Case law also supports the principle that a letter may serve as an informal claim.

However, the temporal proximity between the filing of EMAX's Form 1139 and the January 30,

2009 Letter added an additional layer of complexity in analyzing the legal effect of the

submissions to the VIBIR. This Court could find only a single case addressing whether a letter

sent by a taxpayer *following* the filing of a Form 1139 constituted an informal claim, (*Bethlehem

Indus.,* 1982 WL 1704), and based on facts much different from those present here, found that it

could not. Thus, there appears to be little established guidance regarding the unique

administrative exhaustion issue presented by this case.  Further, the informal claim doctrine is inherently nebulous and its application is, by nature, very fact specific.  That is not to say that there could *never* be a case in which a taxpayer made an informal claim in circumstances as to make the VIBIR's position to the contrary unjustified.  However, in this case, in light of all the facts and circumstances surrounding the submission of the Form 1139 and the exchange of letters between Plaintiff and the VIBIR, the Court finds that the VIBIR had a "reasonable basis both in law and fact" for its position that EMAX had failed to exhaust its administrative remedies. *Nicholson,* 60 F.3d at 1026.  Accordingly, the Court finds that the VIBIR has carried its burden of showing that its position was substantially justified and that an award of attorney's fees is therefore barred by I.R.C. § 7430(c)(4)(B).[10]

### III.   CONCLUSION

For the reasons discussed above, the Court finds that, while EMAX has demonstrated that it exhausted its administrative remedies by making an informal refund claim with the VIBIR regarding the $3,431,607 carryback adjustment for tax year 2005, the VIBIR has carried its burden of showing that its position that EMAX failed to exhaust its administrative remedies was substantially justified.  Accordingly, the Court denies Plaintiff's Motion for Attorney's Fees. An appropriate Order accompanies this Memorandum Opinion.


Date: March 31, 2012                                    _____/s/_____
                                                       WILMA A. LEWIS
                                                       District Judge


---

[10]     Because the Court finds that the VIBIR's position was substantially justified, the Court does not reach the other arguments made by the VIBIR in opposition to EMAX's Motion for Attorney's Fees.